The STATE, ex rel. DELPH, Appellant,

v.

CITY OF GREENFIELD et al., Appellees.

[Cite as *State, ex rel. Delph, v. Greenfield* (1991), 71 Ohio App.3d 251.]

Court of Appeals of Ohio,
Highland County.

No. 759.

Decided March 11, 1991.

*Hapner & Hapner* and *Jon C. Hapner,* for appellant.

*James B. Grandey,* Law Director, for appellee city of Greenfield.

*Manley, Burke & Fischer* and *Andrew S. Lipton,* for appellee Gregory Barr.

Harsha, Judge.

The parties once again appear before this court on a dispute over a civil service appointment.[1]

This is an appeal from judgments entered by the Highland County Court of Common Pleas granting the motion of the city of Greenfield and several of its city officials, respondents-appellees, for summary judgment on the complaint of John H. Delph, relator-appellant. Delph's complaint sought a writ of mandamus, injunctive relief, and damages. Also on appeal is the granting of a motion of the appellee city of Greenfield for permission to appoint Clay McPherson to the position of chief of police for the city. We affirm.

Appellant assigns the following errors:

*"First Assignment of Error:*

"The Trial Court erred in allowing the appointment of Clay McPherson as chief of police, without a hearing on the merits herein.

*"Second Assignment of Error:*

"The Trial Court erred in refusing to provide a finding of fact and conclusion of law in the appointment of Clay McPherson.

*"Third Assignment of Error:*

"The Trial Court erred in granting summary judgment in favor of the defendants."

On October 3, 1989, appellant filed a multiple-count complaint.[2] The complaint's first designated cause of action requested that appellees be enjoined

---

1. On August 16, 1984, appellee Gregory Barr was certified by the members of the Greenfield Civil Service Commission for the position of chief of police. On October 29, 1984, appellant filed a complaint in *quo warranto* in this court, claiming he was entitled to be police chief and that Barr was holding the office unlawfully. This court subsequently issued a writ of *quo warranto* ordering Barr to be removed and further ordering appellant's appointment as chief of police. *State, ex rel. Delph, v. Barr* (Apr. 21, 1988), Highland App. No. 571, unreported, 1988 WL 38820. Barr appealed this decision to the Ohio Supreme Court and was granted a stay by that court pending the appeal. On July 5, 1989, the Supreme Court affirmed the issuance of the writ of *quo warranto* providing for the removal of Barr, but reversed this court's judgment ordering appointment of the appellant to the office of chief of police. *State, ex rel. Delph, v. Barr* (1989), 44 Ohio St.3d 77, 541 N.E.2d 59. On September 29, 1989, this court filed an entry directing Barr to vacate the office of chief of police within fourteen days. On October 3, 1989, Barr tendered a written letter of resignation from his position as chief of police, effective October 12, 1989.

2. The complaint alleged that Barr held the office of Greenfield Police Chief illegally since August 1984; that Barr refused to vacate the office pursuant to the judgments of this court and the Ohio Supreme Court; that Barr received compensation for the illegal appointment

from making further payments to appellee Gregory Barr and be required to cover money allegedly illegally paid to Barr. Appellant requested under his second cause of action that appellees be enjoined from appointing Barr to the position of chief of police or allowing him to hold any other position within the department. In the third cause of action, appellant prayed for a writ of mandamus compelling the Greenfield Civil Service Commission to provide a fair, untainted, and competitive examination for the office of chief of police.

In 1984, Barr was appointed police chief. Based upon a *quo warranto* action filed by appellant, he was ultimately ordered to vacate that position. On October 8, 1989, subsequent to receiving Barr's letter of resignation, the Greenfield Civil Service Commission determined that four applicants were entitled to take the examination for chief of police. Among the four eligible candidates was Barr. On October 11, 1989, the trial court granted appellant's motion for a temporary restraining order, thereby enjoining appellees from appointing Barr as chief or from permitting him to take the examination. On October 24, 1989, the trial court vacated its temporary restraining order and ordered that all eligible candidates, including Barr, be permitted to take the examination. The court further ordered that "no permanent appointment for Chief * * * be made * * * until further order of this court."

The examination was given with Clay McPherson receiving the highest score. Barr's score was third. The city subsequently sought permission of the court to appoint McPherson and a hearing was held on that motion on January 5, 1990. The parties subsequently filed respective motions for summary judgment on Delph's complaint.

On March 1, 1990, the court entered a judgment which granted the city's motion for permission to appoint McPherson as police chief. Appellant then filed a written request pursuant to Civ.R. 52 for separate findings of fact and conclusions of law with respect to that judgment entry. This request was overruled on March 15, 1990. On the same date, the court granted appellees' motion for summary judgment and overruled appellant's motion for summary judgment, thereby dismissing appellant's complaint.

---

in excess of $100,000; and that Barr received certain illegal payments from the city of Greenfield for court costs, attorney fees, and other expenses in defending appellant's original *quo warranto* action. Appellant's second designated cause of action alleged that the mayor, the safety service director, and Barr willfully ignored the judgments of this court and the Ohio Supreme Court; that the mayor and safety director intended to appoint Barr as police chief; and that Barr was not eligible to take any competitive promotional examination for police chief. Appellant's third and final designated cause of action alleged that certain unknown persons had permitted certain portions of competitive promotional examination for police chief or reference material for the examination to be released to Barr and to at least one Greenfield police sergeant and that this action invalidated the fairness of any examination.

■ Appellant's first assignment of error asserts that the trial court erred in allowing the appointment of McPherson as police chief without a hearing on the merits. The second assignment of error asserts that the court erred in refusing to provide findings of fact and conclusions of law for its decision authorizing McPherson's appointment. In that both assignments of error relate to the trial court's March 1, 1990 judgment entry granting the city's motion for permission to appoint McPherson, they will be considered jointly.

Appellant contends that the trial court was required to hold an evidentiary hearing prior to approving the appointment of McPherson as police chief. While unable to direct this court to any specific statutory or case law mandating such a requirement, appellant generally asserts that procedural due process necessitated such a hearing. Appellant further contends that by sanctioning McPherson's appointment before considering the motions for summary judgment, which in part were directed to the issue of the fairness of the exam, the trial court effectively decided the case.

■ First, we note that the only apparent reason that the city had to seek the court's permission to proceed with the appointment, was the trial court's prior order of October 24, 1989. At that time, the court dissolved the prior temporary restraining order which had prohibited the city from appointing Barr or allowing him to take the examination. The court's new entry prohibited appointment of a permanent chief "until further order of this court." We do not believe that this language, in and of itself, created a requirement for a full evidentiary hearing or established a procedural due process right therein. In any event, the court did set the matter for hearing and apparently one was ultimately held January 5, 1990. The parties differ as to the nature of the hearing.[3] Appellant would be entitled to an evidentiary hearing only if it was necessary for the court to decide genuinely disputed facts in determining whether or not to approve the appointment of McPher-

---

3. The record indicates that a hearing on the city's motion to appoint McPherson as police chief was originally scheduled for December 15, 1989. Counsel for appellant requested a continuance and the matter was rescheduled for January 5, 1990 at the courthouse in West Union, Ohio. The parties differ as to whether an evidentiary hearing was actually held, with appellant arguing that the failure to conduct such a hearing was error. Appellees contend a hearing was held but that appellant failed to present evidence. We note that after filing a notice of appeal, appellant filed an "order for transcript" in which he indicates that "there is no verbal transcript to be transcribed." The trial court's order granting the city's motion to appoint McPherson indicates that the court's decision was made upon the motion "with supporting information." It is axiomatic that it is appellant's burden to provide a record for appellate review. Based upon a complete lack of record as to what did occur on January 5, 1990, we will not speculate further as to the nature of that hearing. Accordingly, we must presume the validity of the lower court's proceedings. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219, 400 N.E.2d 384, 385; *Maloney v. Maloney* (1986), 34 Ohio App.3d 9, 11, 516 N.E.2d 251, 252.

son. In making their motion, the city attached a copy of the minutes of a meeting of the Greenfield Civil Service Commission wherein they certified the results of the promotional examination which the court had ordered. These minutes indicate that McPherson received the highest score. The record is silent as to any evidence, testimonial or documentary, presented at any time by appellant in an effort to contest the issue of who received the highest score. In the absence of a genuine factual dispute as to the score or other qualifications for the appointment, we find no error in the trial court's approval of McPherson.

In reaching this conclusion, we note appellant's contention that the approval effectively decided the case prior to a consideration of the summary judgment motions. We believe appellant has failed to discern the distinction between the question of who received the highest score, *i.e.,* the appointment process, and the question of the underlying fairness of the examination, *i.e.,* the matter at issue under the respective motions for summary judgment. Because we believe the trial court could properly decide the former without predetermining the latter, we overrule appellant's first assignment of error. In other words, having found that McPherson received the highest score, the court was free to invalidate the test and vacate the position subsequently if it determined there was merit to appellant's claims of unfairness.

In his second assignment of error, appellant contends the trial court erroneously overruled his timely request for findings of fact and conclusions of law.[4] Civ.R. 52 provides, in pertinent part, as follows:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law.

" * * *

---

**4.** We note that when a timely motion for findings of fact and conclusions of law has been filed in accordance with Civ.R. 52, the time period for filing a notice of appeal does not commence to run until the trial court files its findings of fact and conclusions of law. *Walker v. Doup* (1988), 36 Ohio St.3d 229, 522 N.E.2d 1072; App.R. 4(A). Accordingly, if appellant's argument under the second assignment of error were meritorious, consideration of the merits of his first assignment of error might arguably be premature since the March 1, 1990 entry would not be a final appealable order until the trial court issued findings of fact and conclusions of law. *Id.;* see, also, App.R. 4(A).

*"Findings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56."* (Emphasis added.)

Appellees contend that since Civ.R. 52 explicitly states that findings of fact and conclusions of law "are unnecessary upon all other motions," the judgment of the trial court granting the city's motion to appoint McPherson as police chief did not require the court to comply with appellant's request. Civ.R. 52 is based upon a similarly worded federal rule of civil procedure. Treatises analyzing Fed.R.Civ.P. 52 have noted that regardless of what the rule's actual terminology requires, whenever a decision of a matter requires the court to resolve conflicting versions of the facts, findings are desirable and ought to be made. 9 Wright & Miller, Federal Practice and Procedure (1971) 694, Section 2575; see, generally, 5A Moore's Federal Practice (2 Ed.1987), Section 52.08. Conversely, motions which raise only questions of law in which the trial court does not make findings of fact *per se,* such as motions for summary judgment and motions directed to pleadings, do not necessitate findings of fact and conclusions of law. See, *e.g.,* Moore's Federal Practice, *supra,* at 52-182.

In Ohio, it has been held that the provisions of Civ.R. 52 are mandatory in any situation in which questions of fact are tried by the court without intervention of a jury. *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 172, 23 OBR 336, 337, 492 N.E.2d 146, 147; *Werden v. Crawford* (1982), 70 Ohio St.2d 122, 124, 24 O.O.3d 196, 197, 435 N.E.2d 424, 426. Accordingly, in *Werden,* Civ.R. 52's requirement of findings of fact and conclusions of law upon timely request was held applicable to proceedings involving a motion for change of custody, despite the "unnecessary upon all other motions" language of the rule. But, see, *In re Thrush* (1988), 44 Ohio App.3d 40, 541 N.E.2d 119, where an appellate court held that Civ.R. 52 does not require separate findings of fact and conclusions of law upon timely request in proceedings involving a modification of visitation.

■ Pursuant to *Gibson* and *Werden, supra,* the dispositive issue is whether the motion for court permission to appoint McPherson as chief was a motion in which questions of fact were tried by the court. Findings of fact and conclusions of law are required, among other reasons, when a judgment is rendered in general terms since reviewing court may not be sure whether the case was decided in reliance upon relevant and competent evidence or upon wrongly admitted evidence, or upon the erroneous application of legal principles. *Gibson, supra,* 23 Ohio St.3d at 172–173, 23 OBR at 337–38, 492 N.E.2d at 147–48, citing *St. Paul Fire & Marine Ins. Co. v. Battle* (1975), 44 Ohio App.2d 261, 267, 73 O.O.2d 291, 294, 337 N.E.2d 806, 812. In other words,

they are necessary to prosecute an appeal and for effective appellate review. *Walker v. Doup* (1988), *supra,* 36 Ohio St.3d at 231, 522 N.E.2d at 1074.

█ A reviewing court must presume that the trial court applied the law correctly. *State v. Coombs* (1985), 18 Ohio St.3d 123, 125, 18 OBR 153, 154–155, 480 N.E.2d 414, 416. As noted above, in that the record fails to indicate that any questions of fact were tried to the court on appellee city of Greenfield's motion, the lower court did not commit error in overruling appellant's request for findings of fact and conclusions of law. *Gibson, supra; Werden, supra.* Appellant's second assignment of error is overruled.

Appellant's third assignment of error asserts that the trial court erred in granting summary judgment in favor of appellees. Civ.R. 56(C) provides, in pertinent part, as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. The nonmoving party is entitled to have the evidence construed most strongly in his favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.

█ Appellant contends that the trial court erred in granting summary judgment in favor of appellees since there remain genuine issues of material fact as to all three of his causes of action listed in his complaint. Appellee city of Greenfield argues that since appellant failed to respond by affidavit or

otherwise to appellees' motions for summary judgment, instead of filing affidavits in support of his own summary judgment motion, those affidavits could not be considered by the trial court in its determination. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine issue for trial. *Mitseff, supra,* at 115, 526 N.E.2d at 801; Civ.R. 56(E). We are unpersuaded by the city's argument that appellant rested upon the mere allegations of his pleadings, since the affidavits he filed were in support of his own motion for summary judgment instead of attachments to a memorandum in opposition to appellees' summary judgment motions. Rather, the manifest language of Civ.R. 56 indicates that affidavits filed in support of a party's summary judgment motion are implicitly filed in opposition to the other party's Civ.R. 56 motion and are to be considered by the trial court in its determination. See, *e.g.,* Civ.R. 56(C). Therefore, all affidavits and other pertinent Civ.R. 56(C) material filed by the parties were properly before the court below for its determination.

■ In considering the pertinent summary judgment evidence, appellant's complaint's first cause of action requested that a writ of mandamus issue to require the city auditor and city treasurer to recover money illegally paid to Barr during his tenure as police chief, and that they be enjoined from paying any additional compensation to Barr. Appellant contends that pursuant to R.C. 2733.18, 733.12, and 733.44, as well as the prior holdings of this court and the Ohio Supreme Court that Barr was holding the office of police chief unlawfully, he was entitled to the relief requested.

R.C. 2733.18 provides that within one year after a judgment in an action in *quo warranto* is entered in favor of the person averred to be entitled to an office, the person in whose favor the judgment is rendered may bring an action against the party ousted, and recover the damages he sustained by reason of the usurpation. In the instant case, it is apparent that since appellant was determined by the Ohio Supreme Court not to be entitled to the office of chief of police, *Delph, supra,* he could not recover damages pursuant to R.C. 2733.18. See R.C. 2733.17, which contemplates that the person bringing the *quo warranto* action be found to be entitled to the office.

■ The remaining statutory provisions cited by appellant provide as follows:

R.C. 733.12—Auditing accounts

"Upon the death, resignation, removal or expiration of the term of any officer, the auditor or clerk shall audit the accounts of the officer, and, if he is

found indebted to the municipal corporation, the auditor or clerk shall immediately give notice thereof to the legislative authority and to the village solicitor or city director of law, and the latter shall proceed forthwith to collect the indebtedness."

R.C. 733.44—Powers and duties of treasurer

"The treasurer of a municipal corporation shall demand and receive, from the county treasurer, taxes levied and assessments made and certified to the county auditor by the legislative authority of such municipal corporation and placed on the tax list by such auditor for collection, moneys, from persons authorized to collect or required to pay them, accruing to the municipal corporation from any judgments, fines, penalties, forfeitures, licenses, and costs taxed in mayor's court, and debts due the municipal corporation. Such funds shall be disbursed by the treasurer on the order of any person authorized by law or ordinance to issue orders therefor."

The uncontroverted evidence herein, including appellees Barr's, Daniels', and Vanzant's affidavits, indicates that Barr performed his duties police chief and that all compensation he received as salary was for services rendered by him to the city of Greenfield. Moreover, Barr was determined by this court not to be in contempt of any of our prior orders, and he submitted his resignation within the ordered time frame. Under these circumstances, appellant failed to raise a genuine issue of material fact that Barr was "indebted" to the city of Greenfield and, therefore, neither the city auditor nor the city treasurer had any duty pursuant to R.C. 733.12 or 733.44 to recover the salary paid to appellee Barr in his capacity as police chief.

Appellant's second cause of action sought an order enjoining the appointment of Barr as chief and, further, enjoining him from taking the promotional examination. We agree with appellees that since Barr was not ultimately appointed police chief, even though he was allowed to take the examination, this cause of action is moot. See, *e.g.*, *In re Appeal of Suspension of Huffer from Circleville High School* (1989), 47 Ohio St.3d 12, 546 N.E.2d 1308; *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 30 OBR 33, 505 N.E.2d 966; cf., also, *Martin v. Judges of Lucas Cty. Court of Common Pleas* (1990), 50 Ohio St.3d 71, 552 N.E.2d 906 (writ of mandamus not available when issue is moot).[5]

Appellant's third cause of action sought a writ of mandamus compelling the Greenfield Civil Service Commission to provide a fair, untainted, and competi-

---

5. Moreover, to the extent that appellant's second cause of action sought an injunction against Barr from holding "any position" within the Greenfield Police Department, the

tive examination for police chief, and to enjoin the expenditure of other money to pay for costs of expenses incurred by Barr. Section 10, Article XV of the Ohio Constitution provides that "[a]ppointments and promotions in the civil service of * * * cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations." R.C. 124.44 provides that "[n]o position above the rank of patrolman in a police department shall be filled by any person unless he has first passed a competitive promotional examination."

The term "competitive promotional examination" is not defined in the Revised Code. Accordingly, it must be construed according to the rules of grammar and common usage. In this regard, the analogous phrase "competitive civil service examination" has been defined as an "[e]xamination which conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed by other examiners of equal ability and experience." Black's Law Dictionary (5 Ed.1979) 257. Although not expressly mentioned in the statute, the term "competitive" also appears to connote some degree of fairness in the administering of the examination. See, *e.g., State, ex rel. Hanley, v. Roberts* (1985), 17 Ohio St.3d 1, 6–7, 17 OBR 1, 5–6, 476 N.E.2d 1019, 1023–1024, where the Ohio Supreme Court opined that an applicant's earlier participation in an identical examination might invalidate his examination score because he had an unfair advantage over other applicants.

The evidence here indicates that: (1) at no time did any of the applicants or any of the appellees have possession or access to any part of the promotional examination (affidavit of David T. Clancy, preparer of the examination); (2) on or about September 21, 1989, Robin Roche inquired about a list of reference material for the examination and was permitted to copy any information he wanted (affidavits of Vanzant, Barr, and Roche); (3) within the next one to two weeks and well in advance of the November 3, 1989 examination, all of the applicants received the list of reference material (affidavits of Barr, McPherson, Douglass, and Roche); (4) the city of Greenfield did not provide source materials for the examination, although McPherson got copies of some of the source material from the Hillsboro Police Department (affidavit of Douglass); and (5) Barr possibly got the list of reference material earlier than the other applicants and was granted every possible break that the other appellees could grant him (affidavits of Douglass and Roche).

In order to grant a writ of mandamus, a court must find that the relator has a clear legal right to the relief prayed for; that the respondent is

---

summary judgment evidence fails to raise a genuine issue of material fact that would preclude Barr's employment with the police department in a rank lower than police chief.

under a clear legal duty to perform the requested act; and that relator has no plain and adequate remedy at law. *State, ex rel. Worcester, v. Donnellon* (1990), 49 Ohio St.3d 117, 118, 551 N.E.2d 183, 184. It might be argued that the Civ.R. 56(C) evidence in this case, when construed most strongly in appellant's favor, raises a genuine issue of fact as to whether appellee Barr had been given an unfair advantage in obtaining the list of reference material. However, this does not constitute a genuine issue of "material" fact, since Barr was ultimately not the person who received the highest examination score. See *Martin, supra.* That is, this issue was not "material" and any error in this regard was not prejudicial as a matter of law where the evidence fails to indicate that *McPherson* received an unfair advantage. As noted by appellees, the fact that McPherson was able to use his own initiative to acquire materials on the reference list does not invalidate the examination. Moreover, although it might have been preferable for the city of Greenfield to provide the materials on the list free of charge, it was under no legal duty to do so.

 Appellant's final contention is that there remains a genuine issue of material fact precluding summary judgment in favor of appellees regarding his prayer for injunctive relief preventing appellees from reimbursing Barr for legal fees incurred in defending the *quo warranto* action in case No. 571. As noted by appellees, Barr was not at fault for unlawfully holding office; rather, it was the noncompliance of officials of the city of Greenfield's civil service commission with R.C. 121.22(H) (Ohio's Sunshine Act) in certifying Barr as chief of police that necessitated his subsequent removal. Although it might only constitute a moral obligation to reimburse Barr for attorney fees and other expenses incurred in defense of the *quo warranto* action, a consideration of this claim would be a proper public function for appellees. See, *e.g., State, ex rel. Flagg, v. Bedford* (1966), 7 Ohio St.2d 45, 47, 36 O.O.2d 41, 42, 218 N.E.2d 601, 603. Accordingly, the lower court did not err in dismissing appellant's claim pertaining to injunctive relief on this subject.

In sum, the trial court properly entered summary judgment in appellees' favor where, after construing the evidence most strongly in appellant's favor, there was no genuine issue as to any material fact, appellees were entitled to judgment on appellant's complaint as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion was adverse to appellant. Accordingly, for all of the foregoing reasons, appellant's third assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STEPHENSON, P.J., and GREY, J., concur.